UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

      Plaintiff,

v.                                      CASE NUMBER: 2:06 CR 63

VIKRAM S. BUDDHI

      Defendant.

## MOTION TO DISMISS AS A MATTER OF LAW
## FOR FAILURE TO STATE AN OFFENSE

Comes now Defendant, by counsel, John E. Martin, and requests this Honorable Court to dismiss the eleven count Indictment against the defendant.

## ARGUMENT

I.     The Internet Postings that the Government Attributes to Mr. Buddhi Do Not Contain "Threats" and Therefore are Not Proscribed By 18 U.S.C. §§ 871(a), 879(a), 875(c), and 844(e).

Eighteen U.S.C. §§ 871(a), 879(a), 875(c), and 844(e) proscribe "threats." An element of §§ 871(a), 879(a), 875(c), and 844(e) that the government must prove is that the defendant transmitted a communication containing a "threat."

The internet postings that the government attributes to Mr. Buddhi do not involve communications containing "threats."[1] A "threat" is defined as follows: "A communicated intent to inflict harm or loss on another . . . ." *Black's Law Dictionary* 1519 (8th Ed. 2004). Whereas a

---

[1] The government provided exhibits 1 through 5 at the detention hearing which the defense believes represent the evidence upon which the government will rely concerning the alleged threats. (See attached).

1

"threat" requires that the person communicate an intent to inflict harm on another, "advocacy" is defined as "[t]he act of pleading for or actively supporting a cause or proposal." *Black's Law Dictionary* 60 (8th Ed. 2004). Mere political advocacy cannot be construed as "threats." *See Virginia v. Black*, 538 U.S. 343, 359 (2003) (noting distinction between "threats" generally and "true threats" as a category of "threats" and "political advocacy" generally as distinct forms of speech with distinct analyses under the First Amendment); *Watts v. United States*, 394 U.S. 705 (1969) (holding that statutes such as § 871 that proscribe "threats" require the government to prove "true threats").

The statutes that the government alleges Mr. Buddhi violated prohibit "threats," which the Supreme Court in *Watts* limited to "true threats." Political advocacy is analyzed under the test articulated in *Brandenburg v. Ohio*, 395 U.S. 444 (1969). Courts apply the "true threat" analysis when determining whether a statement is proscribed under statutes that prohibit "threats." Political advocacy is not subject to the "true threat" analysis. Therefore, statements of political advocacy cannot form the basis of a prosecution under §§ 871(a), 879(a), 875(c), or 844(e).

The internet postings that the government attributes to Mr. Buddhi do not contain threats but rather constitute mere political advocacy. The postings call on the Iraqi people to kill George W. Bush, Dick Cheney, Laura Bush, and Lynne Cheney and call on the Iraqi people to bomb buildings. The context within which the messages were found placed on Yahoo space - and the entirety of each of the messages - reveals that the postings were pleading support for a political cause - that of the Iraqi people in the midst of a perceived war against their exploitation. Thus the postings clearly constitute political advocacy and do not fall within the general category of

"threats," of which only "true threats" are proscribed by statute.

As such, the postings are not proscribed by §§ 871(a), 879(a), 875(c), or 844(e), and the indictment therefore fails to allege violations under the statutes. The indictment is legally deficient and should be dismissed.

> II. Even if the Court Construes the Internet Postings As "Threats" Subject to Prosecution Under 18 U.S.C. §§ 871(a), 879(a), 875(c), and 844(e), The First Amendment Protects the Author of the Internet Postings Against Conviction Under Law and Therefore the Indictment Must Be Dismissed. As such, the defense moves to dismiss the Indictment.

Even if the Court believes that the internet postings attributed to Mr. Buddhi could form the basis of a prosecution under 18 U.S.C. §§ 871(a), 879(a), 875(c), and 844(e), the postings represent speech protected by the First Amendment. Though the issue of whether the speech that Mr. Buddhi allegedly engaged in is a "true threat" is an issue of fact to be resolved by the trier of fact, the constitutional issue of whether the speech is afforded protection against conviction by the First Amendment is a matter of law that may be resolved prior to trial. *Dennis v. United States*, 341 U.S. 494, 513 (1951); *see Watts v. United States*, 394 U.S. 705 (1969) (holding that speech engaged in by defendant fell outside reach of statute as a matter of law); *Planned Parenthood v. American Coalition*, 290 F.3d 1058, 1068 (9th Cir. 2002) (noting that issue of whether speech constituted "true threat" for purposes of § 871 is a question for the trier of fact except in those "few cases [that] may be so clear that they can be resolved as a matter of law").

In *Watts* the Supreme Court noted that "a statute such as [§ 871], which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind." *Watts*, 394 U.S. at 707. The Court noted further that "[w]hat is a threat must be distinguished from what is constitutionally protected speech." *Id; see National Association for*

3

*the Advancement of Colored People v. Claiborne*, 458 U.S. 886, 913 (1982) (citation omitted) (stating that "expression on public issues 'has always rested on the highest rung of the hierarchy of First Amendment values'"); *Garrison v. Louisiana*, 379 U.S. 64. 74-75 (noting that "speech concerning public affairs is more than self-expression; it is the essence of self-government"); *New York Times Company v. Sullivan*, 376 U.S. 254, 270 (1964) (recognizing the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials"); *Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940) ("In the realm of religious faith, and in that of political belief, sharp differences arise. . . . To persuade others to his point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of citizens of a democracy.")

The Court must consider the internet postings that the government attributes to Mr. Buddhi "against the background of [this] profound national commitment" to First Amendment expression. *New York Times Company*, 376 U.S. at 270. As in *Watts*, the statements attributed to Mr. Buddhi are "merely a form of political hyperbole" that fall "outside the reach of [§§ 871(a), 879(a), 875(c), and 844(e)] as a matter of law." *Rogers v. United States*, 422 U.S. 35, 44 (1975) (Marshall, J., concurring).

First, the internet postings involve advocacy. Nearly all the cases that result in convictions under the threat statutes involve defendants who communicate an intent to

4

themselves commit the act. *See, e.g.*, *United States v. Howell*, 719 F.2d 1258 (5th Cir. 1984) (recognizing distinction between advocacy and direct threats and rejecting defendant's claim that his statement that he himself would harm the President constituted advocacy and not a threat proscribed by § 871).

Here, in Mr. Buddhi's case, the author of the internet postings advocates Iraqis to kill George W. Bush, Dick Cheney, Laura Bush, Lynne Cheney, and advocates Iraqis to bomb buildings. The author never communicates an intent to himself commit the acts.

Second, the Court must consider the context in which the statements were posted. The Court should consider both the social context - the forum within which the messages existed - and the political context in which the messages were posted. In *Watts* the Supreme Court focused on the fact that the statement was made during a political debate amongst young people and that both the petitioner and the crowd listening to the statement had laughed after the statement was made. *Watts*, 394 U.S. at 706. Here, in Mr. Buddhi's case, the messages were posted on an internet message board. Venues such as message boards, accessible to "anyone of the tens of millions of people in this country (and more abroad) with internet access" are "often associated with 'cajoling, invective, and hyperbole.'" *SPX Corp. v. Doe*, 253 F.Supp2d 974, 981 (N.D. Ohio 2003).

As with the bystanders in *Watts* who heard the petitioner's threatening statement and laughed, in Mr. Buddhi's case "[a] reasonable reader would not view the . . . statements at issue as 'facts' when placed on such an open and uncontrolled forum." *Id.*

The Court must also the consider the political context in which the statements were posted. In *Watts* the Supreme Court noted that the statement occurred on August 27, 1966,

during a public rally on the Washington Monument. The rally concerned the Vietnam War and occurred during a time of heightened political debate concerning the war. The postings attributed to Mr. Buddhi similarly concerned public affairs and occurred in a time of heightened public discourse concerning a war and in a forum in which public affairs are routinely discussed. As such, the postings, as "part of public discourse enjoy[] far greater protection than identical speech made in a purely private context." *Planned Parenthood v. American Coalition*, 290 F.3d 1058, 1099 (9th Cir. 2002) (Kozinski, J., dissenting).

Moreover, even if the advocacy in the internet postings attributed to Mr. Buddhi could be prosecuted under §§ 871(a), 879(a), 875(c), and 844(e), the Court must analyze the postings under the test articulated by the Supreme Court in *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

In *Brandenburg* the Supreme Court recognized "the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg*, 395 U.S. at 447; s*ee Noto v. United States*, 367 U.S. 290, 297-98 (1961) (recognizing precedent that "the teaching of the moral propriety or even moral necessity for a resort to violence, is not the same as preparing a group for violent action and steeling it to such action"); *Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1014 (7th Cir. 1984) (Judge Posner noting as follows: "If . . . a newly organized group of white supremacists vowed to take revenge on Chicago for electing a black mayor, these statements, made by groups with no 'track record' of violent acts, might well be privileged. . . . Or suppose the leaders of a newly formed organization of Puerto Rican separatists went around Chicago making speeches to the effect that, if the United

States does not grant Puerto Rico independence soon, it will be necessary to begin terrorist activities on the mainland United States. These speeches could not, in all probability, be made the basis of a prosecution.").

Under the test articulated by the Supreme Court in *Brandenburg*, the postings attributed to Mr. Buddhi constitute protected First Amendment expression. The postings clearly concern the Iraq war and assert only a "moral necessity for a resort to violence" in response to the war.

Finally, in *Rogers*, Justice Marshall writing in concurrence recognized that courts may rule as a matter of law on the issue of whether speech that the government alleges violates § 871 is protected First Amendment expression because of the "substantial risk of conviction for a merely crude or careless expression of political enmity." *Rogers*, 422 U.S. at 44. Here, Mr. Buddhi is a foreign national and the internet postings that the government attributes to him express crudely worded political enmity for the United States government and the American people. The risk is significant of a jury "encroaching on constitutionally protected speech" and convicting him based not on whether the messages constitute "true threats," but on the fact that a foreigner posted messages that express a crude, hostile, and perverse enmity toward the United States and its people. *Id.*

## CONCLUSION

Taken in both the social and political context in which the messages were posted, the internet postings attributed to Mr. Buddhi represent a "kind of political hyperbole," a "'kind of very crude offensive method of stating a political opposition to the President.'" *Watts*, 394 U.S. at 1401, 1402. The internet postings, as a matter of law, like the statement in *Watts*, fall outside the reach of §§ 871(a), 879(a), 875(c), and 844(e), and cannot be made the basis of a prosecution. The indictment fails to state offenses under federal law and should be dismissed.

          Respectfully submitted,

          Northern District of Indiana
          Federal Community Defenders, Inc.

          By:   s/John E. Martin
               John E. Martin
               31 East Sibley Street
               Hammond, IN 46320
               Phone: (219) 937-8020
               Fax:   (219) 937-8021

## CERTIFICATE OF SERVICE

I hereby certify that, on February 23, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/CM/ECF system which sent notification of such filing to the following:

        **Philip Craig Benson**
        philip.benson@usdoj.gov

and I hereby certify that I have mailed the document by U.S. Postal Service to the following non CM/CM/ECF participants:

s/ John E. Martin