UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

    Plaintiff,

v.                               CASE NUMBER: 2:06 CR 63

VIKRAM S. BUDDHI

    Defendant.

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AS A MATTER OF LAW FOR FAILURE TO STATE AN OFFENSE

Vikram Buddhi, by counsel, John E. Martin, files this reply to the Government's Response to Defendant's Motion to Dismiss as a Matter of Law for Failure to State an Offense.

### ARGUMENT

Although Mr. Buddhi's Motion to Dismiss for Failure to State an Offense raised distinct issues of law, the government's response failed to deal with any of the issues and the response in substance reduces to a claim that all the issues Mr. Buddhi raised are issues of "fact solely within the province of a jury." [Government's Response p. 3]. All the issues raised by Mr. Buddhi concern his constitutional rights and are appropriately considered as matters of law.

First, the Court has authority in the facts and circumstances of this case to decide as a matter of law that 18 U.S.C. §§ 871(a), 879(a), 875(c), and 844(e) do not

proscribe the internet postings provided by the government.[1] In *Watts v. United States*, 394 U.S. 705 (1969), the Supreme Court said that "[a] statute, such as [§ 871(a)], which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind." *Watts*, 394 U.S. at 707. In *Watts* the context was the Vietnam War; in Mr. Buddhi's case, the context is the Iraq war.

Second, the contents of the internet postings are protected speech. More specifically, Mr. Buddhi urges the Court to examine: (A) whether the internet postings are part of an ongoing public debate, as propounded in *Watts* with regard to the Vietnam War, concerning the war in Iraq and as such must be interpreted "against the background of a profound national commitment to the principle that the debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials," *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); (B) whether the internet postings expressed on the Yahoo message boards in the context of the Iraq war represent mere political hyperbole and political banter, apparent on the face to see conclusively the political nature of the

---

[1] The government provided the attached Government Exhibits 1 through 5 at the detention hearing. [Previously attached to Docket Entry 53] [Hereinafter referred to as Government Exhibit] The defense will assume for purposes of this Motion that Government Exhibits 1 through 5 represent the evidence upon which the government will rely.

2

postings, so as to fall under *Watts* as constitutionally protected speech, and (C) whether the internet postings represent mere advocacy to the Iraqi people protected under *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

> I. The Court Has Authority to Decide As a Matter of Law That 18 U.S.C. §§ 871(a), 879(a), 875(c), and 844(e) Do Not Proscribe the Internet Postings Attributed to Mr. Buddhi.

It is well established law that before examining as a matter of fact whether there is an actionable "true threat" in the pure speech, there is a constitutional obligation upon courts to examine whether the pure speech is protected by the First Amendment. "When facts are found that establish the violation of a statute, the protection against conviction afforded by the First Amendment is a matter of law. . . . Whether the First Amendment protects the activity which constitutes the violation of the statute must depend upon a judicial determination of the scope of the First Amendment applied to the circumstances of the case." *Dennis v. United States*, 341 U.S. 494, 513 (1951).

In the circumstances of the present case, the internet postings alleged to be unlawful must be examined for availability of First Amendment protection. In *Planned Parenthood v. American Coalition*, 290 F.3d 1058 (9th Cir. 2002), the Ninth Circuit recognized that in cases that involve speech that the government alleges is an unlawful threat, there exist "a few cases," like *Watts v. United States*, 394 U.S. 705 (1969), that "may be so clear that they can be resolved as a matter of law." *Planned Parenthood*, 290 F.3d at 1068.

3

The government fails to appreciate that the facts of each case are different. The cases cited by the government are all cases in which it was alleged that the person accused stated orally or in writing that he himself would kill or harm the President in circumstances which required investigation of facts to know whether there was a "true threat." The cases could not merit being decided as a matter of law. Even in *Watts*, where the Supreme Court ruled that the defendant's speech was mere "political hyperbole," the pure speech at issue involved a statement that the defendant himself would kill the President. *Watts*, 394 U.S. at 706, 708. Moreover, in *Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969), the Supreme Court noted that pure speech that advocates "the use of force or of law violation" cannot be proscribed "except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg*, 395 U.S. at 447. In the present case, the author of the internet postings never even expressed that he himself would kill individuals or destroy property. The internet postings can only be construed as advocacy.

Some relevant parts of the text of the internet postings are as follows:

GO IRAQIS! [See attached Government Exhibits 1, 2, and 3].

IRAQIS! GIVE . . . THE TIT REACTION FOR THE TAT ACTION . . . . [See attached Government Exhibit 4].

GO IRAQIS! SEEK REVENGE FOR AMERICANS KILLING 312,769 IRAQI WOMEN AND CHILDREN IN IRAQ [See attached Government Exhibit 5].

> OPPORTUNIST AMERICANS INVADED IRAQ TO KILL IRAQIS
> AND GRAB YOUR LAND USING DELIBERATE FALSE PRETEXTS
> [See attached Government Exhibit 5].
>
> SO IRAQIS, FIGHT BACK . . . . [See attached Government Exhibit 5].
>
> IT IS YOUR LAND AND YOUR RIGHT TO DEFEND YOUR LAND
> AGAINST AMERICAN AGGRESSION. DO UNTO THEM WHAT
> THEY DO UNTO YOU. [See attached Government Exhibit 5].

Thus it is clear that the internet postings called upon the Iraqis to react to perceived aggression by political figures in the United States. The central theme of the postings is of a political nature; the author perceives that the Iraqi people are victims of unjustified aggression and calls on the apparent victims to react to perceived aggressors.

Political expression such as the pure speech in the internet postings "'has always rested on the highest rung of the hierarchy of First Amendment values.'" *National Association for the Advancement of Colored People v. Claiborne*, 458 U.S. 886, 913 (1982) (citation omitted). Like the defendant's speech in *Watts*, the speech in the internet postings is the kind of political speech that the Court has authority to rule falls outside the reach of the statutes as a matter of law.

> II. The Internet Postings Attributed to Mr. Buddhi Fall Outside the Reach of 18 U.S.C. §§ 871(a), 879(a), 875(c), and 844(e) as a Matter of Law.

It is apparent that when the internet postings are considered in the context of the "language of the political arena," the pure speech presented in the postings, though "vituperative, abusive, and inexact," is protected speech under the First Amendment. *Watts v. United States*, 394 U.S. 705, 708 (1969). The postings

5

represent "'a kind of very crude offensive method of stating a political opposition to the President." *Id.*

Considered within the following context, the internet postings represent protected speech: (A) the backdrop of the ongoing public debate concerning the war in Iraq just as the Supreme Court in *Watts* found relevant that the speech at issue in that case was uttered against the backdrop of the debate concerning the Vietnam War; (B) the political nature of the internet postings placed on the Yahoo message boards that in the context of the ongoing public debate concerning the Iraq war represent mere political hyperbole; and (C) the pure advocacy in the postings, which is speech protected under *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

### A. The Court Should Consider the Internet Postings Against the Backdrop of the Ongoing Public Debate Concerning the War in Iraq.

In *Watts v. United States*, 394 U.S. 705 (1969), the Supreme Court focused on the political context of the pure speech at issue in the case. The Court noted that the statement at issue was made during a political debate concerning the war in Vietnam. *Watts*, 394 U.S. at 706. Similarly, the internet postings at issue in this case were made during an ongoing public debate concerning the war in Iraq. The postings, like the speech in *Watts*, were of a political nature.

The public debate concerning the war in Iraq is ongoing in public arenas in language as "vituperative, abusive, and inexact" as that present in the internet postings. *Id.* at 708. The following language was recently found on the Yahoo message boards, where the public debate concerning the war in Iraq is ongoing:

6

> Bush should be sentenced to Hang for the massive murder in Iraq. [See attached Defense Exhibit A].
>
> Is the death penalty appropriate for Bush and his henchmen? Yes, I believe it is. [See attached Defense Exhibit B].
>
> BUSH SPEEK WITH FORKED TONGUE, BOLTON proves it. Fry the bastard. [See attached Defense Exhibit C].
>
> AMERICANS SHOULD AIRDROP BUSH OVER IRAQ. So the "insyrgents" can cut his balls off and dismember him. [See attached Defense Exhibit D].
>
> BUSH IS A PRESIDENT OF MASS DESTRUCTION. Bush should be electrocuted. [See attached Defense Exhibit E].
>
> DISMEMBER LAURA AND THE TWINS . . . and give them to george in a bodybag. maybe he will then understand. [See attached Defense Exhibit F].

As can be seen by these few examples, the public debate on internet message boards concerning the war in Iraq continues in the most ugly and vulgar language. The language used, though constituting "vehement, caustic, and . . . unpleasantly sharp attacks on government and public officials," *New York Times Company v. Sullivan*, 376 U.S. 254, 270 (1964), represents "speech concerning public affairs" and as such "is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). "[I]n spite of the probability of excesses and abuses . . . in the long view" the liberties protected in permitting caustic speech "are essential to enlightened opinion and right conduct on the part of citizens of a democracy." *Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940).

B. The Internet Postings, Considered in the Context of the Ongoing Public Debate Concerning the War in Iraq, Represent Mere Political Hyperbole.

As with the pure speech at issue in *Watts v. United States*, 394 U.S. 705 (1969), the internet postings here are of a political nature. The cases cited by the government in its response all involve challenges to the sufficiency of the evidence for conviction, or other matters; none involved challenges to the sufficiency of the indictment. Moreover, the cases all involved defendants who stated that they themselves would kill the President or other individuals.

Here, the internet postings contain no statement indicating that the author of the statement would himself or herself kill anyone. In sharp contrast to the cases cited by the government, in this case the author of the internet postings couches his or her advocacy of the use of violence in political terms. Each of the five postings provided by the government indicates that the author encourages Iraqis to undertake action in response to perceived aggression.

Moreover, the pure speech at issue was placed on a public message board; venues such as message boards are "often associated with 'cajoling, invective, and hyperbole.'" *SPX Corp. v. Doe*, 253 F.Supp.2d 974, 981 (N.D. Ohio 2003). The political nature of the postings is apparent, and the fact that the postings were placed on a public message board in the context of the ongoing public debate concerning the war in Iraq reveals that the postings could be construed only as a "kind of political hyperbole," a "kind of very crude offensive method of stating a political opposition to the President." *Watts*, 394 U.S. at 1401, 1402.

8

C. The Internet Postings Represent Mere Political Advocacy to the Iraqi People, Advocacy Protected Under *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

In *Brandenburg v. Ohio*, 395 U.S. 444 (1969), the Supreme Court recognized that "the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg*, 395 U.S. at 447.

Regardless of who authored the internet postings, it cannot be denied that the postings voice agony over the war in Iraq, an agony expressed in political forums far and wide. The vituperative and crude language of the postings does not obliterate the central message of the postings: that the Iraqi people should respond in kind to those responsible for perceived aggression against their country. Calling upon the Iraqis to act is the essence of the postings.

The government cites to *United States v. Patillo*, 438 F.2d 13 (4th Cir. 1971), to claim that 18 U.S.C. § 871(a) proscribes speech "that incite others to lawless action against the president." [Government's Response p. 2].

In *Patillo* the Fourth Circuit ruled that "an essential element of guilt [under § 871] is a present intention either to injure the President, or incite others to injure him . . . ." *Patillo*, 438 F.2d at 16. The court thus adopted a subjective standard. The

9

Seventh Circuit rejected *Patillo*: "We choose not to follow *Patillo* and instead adhere to the objective standard for a 'true threat.'" *United States v. Fuller*, 387 F.3d 643, 646 (7th Cir. 2004).

The Seventh Circuit adopted the objective standard because it "believe[d] [this] approach best protect[ed] the safety of the President." *Id.* at 647. The Fourth Circuit's statement that § 871 proscribes speech that incites is relevant only where the speaker had a present intention to incite others to harm the President. There is no basis for the government to argue that a person had a present intention to incite others when he posted on a Yahoo financial message board political statements opposing United States aggression generally and the war in Iraq specifically and included as part of his political statements encouragement to Iraqis to harm the President and other public figures as revenge for perceived American aggression.

The case law supports Mr. Buddhi's position that under the objective standard, where there exists no present intention to incite harm, political speech that calls for violence cannot form the basis of a prosecution. *See Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1014 (7th Cir. 1984) (Judge Posner writing that "[i]f . . . a newly organized group of white supremacists vowed to take revenge on Chicago for electing a black mayor, these statements, made by a group with no 'track record' of violent acts, might well be privileged. . . . Or suppose the leaders of a newly formed organization of Puerto Rican separatists went around Chicago making speeches to the effect that, if the United States does not grant Puerto Rico independence soon, it will be necessary to begin terrorist activities on

10

the mainland United States. These speeches could not, in all probability, be made the basis of a prosecution.").

Similarly, the internet postings attributed to Mr. Buddhi cannot be made the basis of a prosecution. Sections 871(a), 879(a), 875(c), and 844(e) proscribe "threats." The internet postings do not contain "threats" but rather can be defined only as "advocacy." "Advocacy" can be interpreted as a "threat" only where "such advocacy is directed to inciting or producing imminent lawless action and is likely to produce such action." *Brandenburg*, 395 U.S. at 447. Thus there must exist at least a "present intention" to produce lawless action, and under *Brandenburg*, there must also exist an imminent likelihood of lawless action.

Here, the internet postings attributed to Mr. Buddhi do not even express a "present intention" to inflict harm and had no chance of producing imminent lawless action on the part of Iraqis. The First Amendment protects the author of the internet postings against prosecution.

In addition, Mr. Buddhi notes that the government in its response has already begun to put the hues to the case as it sees fit. For the first time in the case, the government introduces the element of "incitement." The government writes: "whether Buddhi's incitement of others . . . constitute a 'true threat' is a question of fact solely within the province of a jury." [Government's Response p. 3]. The Indictment returned in this case makes no mention of any "incitement." The Indictment in plain terms conveys in all Counts that Mr. Buddhi "did threaten" that he would kill individuals and destroy property. In sharp contrast, the internet

11

postings that the government claims Mr. Buddhi posted - though it has not presented evidence to support its claim - convey in plain terms an advocacy to Iraqis on an internet message board, an advocacy that in the context of an ongoing public debate concerning the war in Iraq, represents protected speech under the First Amendment.

## CONCLUSION

The Court has authority to rule that the internet postings attributed to Mr. Buddhi fall outside the reach of 18 U.S.C. §§ 871(a), 879(a), 876(c), and 844(e) as a matter of law. As with the defendant in *Watts v. United States*, 394 U.S. 705 (1969), whose speech the Supreme Court ruled fell outside the reach of § 871(a) as a matter of law, the speech attributed to Mr. Buddhi cannot form the basis of a prosecution. The internet postings involve advocacy and therefore must be analyzed under *Brandenburg v. Ohio*, 395 U.S. 444 (1969). Under *Brandenburg* there must exist a "present intention" to produce lawless action, and an imminent likelihood of lawless action. The internet postings were placed on an internet message board, and as part of the ongoing public debate concerning the war in Iraq, the postings as advocacy represented mere political hyperbole protected under the First Amendment.

Under *Dennis v. United States*, 341 U.S. 494 (1951), before the trier of fact may examine whether there is an actionable "true threat" in the pure speech, the Court is required to examine whether the pure speech in the internet postings is protected by the First Amendment. *Dennis*, 341 U.S. at 513. As a matter of law, the

internet postings cannot form the basis of a prosecution. Mr. Buddhi respectfully requests this Honorable Court to dismiss the Eleven Count Indictment for failure to state an offense.

>Respectfully submitted,
>
>Northern District of Indiana
>Federal Community Defenders, Inc.
>
>
>By:   s/John E. Martin
>      John E. Martin
>      31 East Sibley Street
>      Hammond, IN 46320
>      Phone: (219) 937-8020
>      Fax:   (219) 937-8021

## CERTIFICATE OF SERVICE

I hereby certify that, on May 1, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/CM/ECF system which sent notification of such filing to the following:

>**Philip Craig Benson**
>philip.benson@usdoj.gov

and I hereby certify that I have mailed the document by U.S. Postal Service to the following non CM/CM/ECF participants:

>  s/ John E. Martin