## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:06 CR 63 |
| | ) | |
| VIKRAM S. BUDDHI | ) | |

### OPINION and ORDER

**I. BACKGROUND**

Defendant has moved to dismiss the indictment in this case for failure to state an offense (docket # 53) and due to constitutional defects (docket # 54). Defendant is a foreign national pursuing an advanced engineering degree at Purdue University. He is charged with using an instrument of interstate commerce, specifically the internet, to threaten to destroy property and harm the President and Vice President of the United States, their wives, and then-Secretary of Defense Donald Rumsfeld.

The Government alleges that in December of 2005 and January of 2006, defendant posted several messages on a Yahoo! electronic message board designated for discussion of finance and business matters. According to the Government, defendant used a university computer to post the messages, and altered the computer's settings so that the computer activity would be traced back to another student. According to the Government's criminal complaint in this case (docket # 1), the following constitutes some of the language used in defendant's alleged messages:

> CALL FOR ASSASSINATION OF GW BUSH
> ...
> GO IRAQIS!

RAPE AND KILL THE ANGLOSAXONS...NO MERCY.

KILL GW BUSH
RAPE AND KILL LAURA BUSH
KILL DICK CHENEY THE WHITE FAT PIG
RAPE AND KILL LYNNE CHENEY
KILL DONALD RUMSFELD THE OLD GEEZER CROOK
RAPE AND KILL THE ANGLOSAXON REPUBLICANS
...
BOMB KEY SITES IN US:ITS LEGAL 4 ARABS
...
ASSASSINATION OF GW BUSH SOON
...
IT IS NOW LEGAL UNDER INTERNATIONAL LAW TO BOMB KEY SITES IN THE USA. IRAQIS! GIVE ANGLOSAXONS THE TIT REACTION FOR THE TAT ACTION OF BUSH AND REPUBLICANS.
...
KILL THE WHITE ANGLOSAXON AMERICAN BRITISH BASTARDS...
...
BOMB ALL FACILITIES SET UP BY ANGLOSAXONS, BOMB ALL TRADE AND COMMERCE SETUP BY ANGLOSAXONS IN ASIA, AND BUILD YOUR OWN FACILITIES THAT EXCLUDES THE ANGLOSAXONS.
...
BOMB AND DESTROY ANGLOSAXON POWERPLANTS, ROADS, BRIDGES, NUCLEAR PLANS, WATER SUPPLY, COMMERCE BUILDINGS, OIL LINES 'OWNED' BY ANGLOSAXON REPUBLICANS.

## II. DISCUSSION

*A. Motion to dismiss for failure to state an offense (docket # 53)*

Defendant's first motion argues that his statements did not constitute "threats" punishable under 18 U.S.C. § 871(a), 879(a), 875(c), and 844(e) because they were simply political banter and technically only encouraged others to destroy buildings and injure

and kill the political figures. Defendant also advocates that the nature of the internet forum used suggests that his statements should not be interpreted as serious threats. The Government argues that the court should not decide whether defendant's statements constituted "threats" as a matter of law, and that a jury should decide the issue instead.

The statutes that defendant is charged with violating prohibit threats against the President and other individuals. 18 U.S.C. § 871(a), 879(a), 875(c), & 844(e). Because the provisions limit pure speech, they are subject to the constraints of the First Amendment. *Watts v. United States,* 394 U.S. 705, 708 (1969). Such statutes are interpreted "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. " *Id.* To protect these First Amendment values, the government is required to prove that a statement constitutes a "true threat." *United States v. Hoffman*, 806 F.2d 703, 706 (7th Cir. 1986) (quoting *Watts,* 394 U.S. at 708.).

"[I]n order for the government to establish a 'true threat' it must demonstrate that the defendant made a statement 'in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates a statement as a serious expression of an intention to inflict bodily harm upon or to take the life of [another individual].'" *United States v. Khorrami,* 895 F.2d 1186, 1192 (7th Cir. 1990) (quoting *Hoffman,* 806 F.2d at 707). Notably,

"guilt is not dependent upon what the defendant intended, but whether the recipient could reasonably have regarded the defendant's statement as a threat." *United States v. Stewart,* 411 F.3d 825, 828 (7th Cir. 2005).

The main issue here is whether the court or the jury is responsible for determining whether defendant's speech constitutes a true threat. The Government's brief argues that the matter is for the jury to consider. Defendant, on the other hand, claims that the court may decide that his speech does not constitute a true threat in this instance because "[a] few cases may be so clear that they can be resolved as a matter of law." (Def.'s Mot., docket # 53, at 3, quoting *Planned Parenthood v. Am. Coal. of Life Activists,* 290 F.3d 1058, 1068 (9th Cir. 2002)). On this question the Government's brief, though far from enlightening, is on the side of the law.

The Seventh Circuit has stated that, as a general rule, "[t]he question of whether the language constitutes a threat is an issue of fact for the jury." *Khorrami,* 895 F.2d at 1193. Other circuit courts have consistently held the same. For example, the Ninth Circuit has stated:

> Whether any given form of written or oral expression constitutes a true threat for the statute's purposes is a question for the trier of fact under all of the circumstances. A few cases may be so clear that they can be resolved as a matter of law, but most cases arising under this statute present widely varying fact patterns that should be left to the trier of fact.

*United States v. Merrill,* 746 F.2d 458, 462-63 (9th Cir. 1984), *overruled in part on unrelated issue, United States v. Hanna,* 293 F.3d 1080, 1088 n.5 (9th Cir. 2002); *see also United States*

*v. Fulmer,* 108 F.3d 1486, 1492 (1st Cir. 1997) ("Whether a given [statement] constitutes a threat is an issue of fact for the trial jury."); *United States v. Carrier,* 672 F.2d 300, 306 (2d Cir. 1982) ("[W]e believe that whether words used are a true threat is generally best left to the triers of fact. Surrounding factual circumstances may not easily be required to be recounted in all indictments."); *United States v. Kosma,* 951 F.2d 549, 555 (3d Cir. 1991) ("Whether a speaker's language constitutes a threat is a matter to be decided by the trier of fact."); *United States v. Koski,* 424 F.3d 812, 820 (8th Cir. 2005) ("Based on the evidence it was within the province of the jury to decide whether Koski's communications underlying Count II were constitutionally protected speech or threats of injury."); *Melugin v. Hames,* 38 F.3d 1478, 1485 (9th Cir. 1994) ("[T]he issue whether the prosecution has shown a "true threat" is a question of fact for the jury, not a question of law for the court.").

*Khorrami's* general rule applies so long as "a reasonable recipient, familiar with the context of the communication, would interpret it as a threat." 895 F.2d at 1192; *see also Martin v. United States,* 691 F.2d 1235, 1240 (8th Cir.1982) ("If a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury."); *United States v. Maisonet,* 484 F.2d 1356, 1358 (4th Cir. 1973) ("If there is substantial evidence that tends to show beyond a reasonable doubt that an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury, the court should submit the case to the jury.").

5

In this case, defendant claims that he did not technically claim that he would attempt any acts of violence himself, but merely encouraged others to do so. Defendant claims that advocacy of violence is protected by the First Amendment under *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969). However, numerous cases suggest that the fact that defendant did not specifically state that he would be the one to commit the violent acts does not necessarily mean that the statement is not a true threat as a matter of law. For example, in *United States v. Schneider*, the defendant wrote a letter to the chief justices of the Illinois Supreme Court stating, amongst other things: "[A circuit court judge] is of your problem and if is allowed to continue to be mine, he will be executed." 910 F.2d 1569, 1570 (7th Cir. 1990). The Seventh Circuit upheld the jury's finding that the defendant's speech constituted a true threat: "The threat in this case was ambiguous, but the task of interpretation was for the jury." *Id.*

Similarly, in *United States v. Bellrichard*, the Eight Circuit considered whether the First Amendment protected speech in a postcard sent to a county commissioner. 994 F.2d 1318 (8th Cir. 1993). In the postcard, Bellrichard did not claim that he, himself, would commit violent acts against the commissioner, but rather conveyed that others should and would with the following statements: "Dump her in the incinerator!"; "The 1st thing that ought to get burned in that proposed incinerator is your God-damned dead body"; "You'd best begin opposing an incinerator in ol' Winona or else you may get your ignorant ass burned." *Id.* at 1321 n.5. The court upheld the jury's guilty verdict as to that count, finding that the speech "clearly contained language that a jury

6

reasonably could regard as a 'true threat,'" and that the use of outrageous and conditional language was immaterial. *Id.* at 1322. In another case, the Ninth Circuit upheld the defendant's conviction under § 871 for mailing bloody depictions of President Reagan's head and the phrase "Kill Reagan" to local judges, a newspaper, and a church leader. *Merrill,* 746 F.2d at 461. Further, in *United States v. Orozco-Santillan,* the court upheld the jury's finding that statements such as "you will pay for this" constituted true threats, despite fact that the threat was "subtle." 903 F.2d 1262, 1266 (9th Cir. 1990).

In this case, many of defendant's statements depict violence without explicitly naming an actor (e.g., "Kill GW Bush"; "Rape and kill Laura Bush"; etc.). However, the cases cited above (such as *Merrill,* in which the defendant simply stated "Kill Reagan") make clear that this fact is not necessarily determinative of whether the statements constitute true threats. *Khorammi* requires that the jury make the decision in all but the clearest of cases. In light of the above holdings, the court finds that the First Amendment and the statute prohibiting threats against the life of the President and those closest to him do not hinge on technicalities of word choice. A reasonable recipient could still interpret defendant's communications as threats even if his speech was couched in the rhetoric of advocacy. Therefore, the court cannot dismiss the indictment as a matter of law.

Defendant also argues that his speech was merely "political banter," and claims that his case is analogous to *Watts v. United States,* 394 U.S. 705, 708 (1969). In that case,

7

eighteen-year-old Watts appeared at a public rally opposing the draft and the war. He stated: "If they [the military] ever make me carry a rifle the first man I want to get in my sights is L.B.J." His comment was met with a round of laughter from the audience. A jury convicted Watts of violating § 871(a), but the Court found as a matter of law that Watts' speech did not constitute a "true threat" because it was merely a crude and offensive statement of opposition to the President. In overturning the jury's verdict, the court stated: "[W]e do not see how it could be interpreted otherwise."

Defendant points out that, as in *Watts*, defendant's speech related to the war, a matter of public debate. However, "a person may not escape prosecution for uttering threatening language merely by combining the threatening language with issues of public concern." *Bellrichard*, 994 F.2d at 1322. Defendant's statements were made on an internet finance message board, not a forum in which one would necessarily expect political banter regarding the President and his war policy. Further, there is no indication that the statements were met with laughter or were received as jest. The fact that defendant's speech was politically motivated may be a consideration for the members of the jury, but the question still belongs to them.

Finally, defendant repeatedly suggests that his statements should be taken less seriously because they were made in an internet forum. However, this does not transform the "true threats" question into a matter of law for the court. In *United States v. Humphreys*, the Eighth Circuit analyzed internet speech under the same legal tests that apply to all other types. In that case, the defendant stated in an internet chat room:

8

"I am going to pray for a burning bush. Get it? So if you hear that a man runs up and throws gasoline and a match to bush you will know that god did speak through the burning bush. LOL [laugh out loud]." 352 F.3d 1175, 1177 (8th Cir. 2003). The court rejected the defendant's argument that his speech wasn't meant to be taken seriously, and held that "a reasonable person could view it as a serious expression of intent to inflict bodily harm." *Id.* A reasonable person could interpret that defendant's internet speech in this case was intended just as seriously. Accordingly, under *Khorrami* the "true threats" question remains with the jury.

### *B. Motion to dismiss defective indictment*

Defendant's second motion argues that the indictment does not set forth all of the elements of 18 U.S.C. § 871(a), 879(a), 875(c), and 844(e), or adequately inform him of the offenses with which he has been charged. (Def.'s Mot., docket # 54, at 1.) Defendant claims that because the indictment merely tracks statutory language and lacks additional factual detail, he is not able to adequately prepare a defense, and that he "still on the eve of trial must guess at what conduct he needs to defend." (Def.'s Reply, docket # 66, at 11.)

FEDERAL RULE OF CRIMINAL PROCEDURE 7(c)(1) requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." "An indictment is constitutionally sufficient and satisfies Fed. R. Crim. P. 7(c)(1) if it states the elements of the crime charged, informs the defendant of the nature of the charge so she may prepare a defense, and enables the defendant to

9

plead the judgment as a bar against future prosecutions for the same offense." *United States v. Agostino,* 132 F.3d 1183, 1189 (7th Cir. 1997). "It is required, at a minimum, that an indictment provide the defendant with some means of pinning down the specific conduct at issue. The absence of any particular fact is not necessarily dispositive of the issue." *United States v. Anderson,* 280 F.3d 1121, 1124 (7th Cir. 2002) (internal quotation marks and citations omitted).

"Indictments are reviewed on a practical basis and in their entirety, rather than in a hypertechnical manner." *United States v. Smith,* 230 F.3d 300, 305 (7th Cir. 2000) (internal quotation marks omitted). The question is not "whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Allender,* 62 F.3d 909, 914 (7th Cir. 1995). "Facial sufficiency is not a high hurdle. Indictments need not exhaustively describe the facts surrounding a crime's commission nor provide lengthy explanations of the elements of the offense." *United States v. Bates,* 96 F.3d 964, 970 (7th Cir. 1996).

As explained above, the First Amendment requires that the Government prove at trial that defendant's allegedly offensive statements constituted "true threats." Defendant admits that the Government's use of the word "threat," rather than "*true* threat," does not affect the indictment's validity, and rightly so. *United States v. Howell,* 719 F.2d 1258, 1261 (5th Cir. 1983). Defendant also concedes that the exact wording of an alleged threat need not be specifically quoted in an indictment. *United States v. Robin,* 693 F.2d 376, 380 (5th Cir. 1982). Nonetheless, defendant insists that because the "true

threats" analysis is a context-sensitive inquiry,[1] "the context in which the statements were allegedly made is therefore an essential fact relevant to proving the 'true threat' element of the charged offenses." (Def.'s Mot., docket # 54, at 3.) According to defendant, the indictment in this case is insufficient because it does not provide this essential factual context.

A district court adopting this very idea in a presidential death threat case was reversed by the Second Circuit Court of Appeals. *United States v. Carrier,* 517 F. Supp. 644, 648 (D.C.N.Y. 1981), *rev'd,* 672 F.2d 300, 303 (2d Cir. 1982). The district court held:

> The only way to separate protected speech under the First Amendment from unprotected speech is to examine the context within which that speech is uttered. For this reason, it is essential that a properly drawn indictment under Section 871 include some mention of the spoken context of words which the government believes to be threatening within the meaning of that statute.

*Carrier,* 517 F. Supp. at 648. The Court of Appeals reversed, holding that an indictment's failure to set forth the factual context of the alleged threat did not make the indictment insufficient. *Carrier,* 627 F.2d at 303. While the First Amendment requires that a factfinder's determination of a "true threat" be made under a context-sensitive analysis, *Carrier* clarifies that the First Amendment does not change the standards for

---

[1] As explained above, in order to prove the existence of a "true threat" at trial, the Government must demonstrate that the defendant made a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates a statement as a serious expression of an intention to inflict bodily harm upon or to take the life of another person. *Khorrami,* 895 F.2d at 1192.

11

determining the sufficiency of an indictment by requiring the Government to list in the indictment the facts that play into the context-sensitive "true threat" analysis. *Id.*

Seventh Circuit precedent supports the logic set forth in *Carrier*. In *Agostino,* the court stated: "'The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved.'" 132 F.3d at 1191 (quoting *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981)). The court explained that an indictment is not required to reveal the specific facts that the Government would use to prove the intent element of an alleged crime. Similarly, in this case the indictment was not required to reveal the specific facts that the Government would rely on in proving the "true threat" element of defendant's alleged crimes.

So long as the indictment states the elements of the crime charged, informs the defendant of the nature of the charge so he may prepare a defense, and enables the defendant to plead the judgment as a bar against future prosecutions for the same offense, the indictment is sufficient. *United States v. Sandoval,* 347 F.2d 627, 633 (7th Cir. 2003). Defendant's indictment lists the dates of his allegedly offensive speech and the names of the public figures that he allegedly threatened on those dates. For example, count one states: "On or about December 13, 2005, in the Northern District of Indiana and elsewhere, the defendant, Vikram S. Buddhi did knowingly and willfully threaten to kill the President of the United States, George Bush." (Indictment, docket # 9.) The other counts are similarly phrased. Such language "provide[s] some means of pinning down the specific conduct at issue in order to apprise the defendant of the charges."

12

*Sandoval,* 347 F.2d at 633; *United States v. Howell,* 719 F.2d 1258, 1261 (5th Cir. 1983) (indictment charging that the defendant "did willfully and knowingly make an oral threat to take the life of the President of the United States" was held to be "sufficient to apprise Howell of the charge against him and to avoid exposing him to the risk of double jeopardy").

In sum, defendant's motion "confuse[s] his constitutional right to know what offense is charged with his need to know the evidentiary details establishing the facts of such offense." *United States v. Mosley,* 786 F.2d 1330, 1335 (7th Cir. 1986) (internal quotation marks omitted). Defendant "may obtain the factual proof supporting the charges, if vital to his defense, by a motion for a bill of particulars." *Id.* at 1335; FED. R. CRIM. P. 7(f). Indeed, a motion for a bill of particulars is "the preferable procedure," as opposed to a motion attacking the indictment, in a situation where a defendant, charged with issuing threats, believes that he needs additional factual information to prepare his defense.[2] *Carrier,* 672 F.2d at 303 & n.5 ("Armed with a bill of particulars, which may be obtained right after arraignment as per Fed. R. Crim. P. 7(f), setting forth the details under which defendant's allegedly threatening words against the life of the President were spoken, defendant could have made a motion to dismiss the indictment prior to trial.")

---

[2] By noting that a motion for a bill of particulars is the preferable procedure, the court does not necessarily imply that such a motion would be granted.

## III. CONCLUSION

For the foregoing reasons, defendant's motions to dismiss the indictment (docket # 53, 54) are **DENIED**. Defendant's motion for summary ruling (docket #60) is **DENIED** as moot.

**SO ORDERED.**

ENTER: May 22, 2007

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT