UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CAUSE NO. 2:06 CR 63 |
| | ) | |
| VIKRAM BUDDHI | | |

## MEMORANDUM OF LAW REGARDING EXCEPTIONS TO FREE SPEECH UNDER THE FIRST AMENDMENT

Comes now the United States of America, by counsel, Joseph S. Van Bokkelen, United States Attorney for the Northern District of Indiana, through Assistant United States Attorney Philip C. Benson, and hereby files its Memorandum of Law Regarding Exceptions to Free Speech under the First Amendment as follows:

"The protections afforded by the First Amendment, however, are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution. See, e.g., *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem"). The First Amendment permits "restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' " *R.A.V. v. City of St. Paul*, supra, at 382-383, 112 S.Ct. 2538 (quoting *Chaplinsky v. New Hampshire*, supra, at 572, 62 S.Ct. 766).

Thus, for example, a State may punish those words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire, supra,* 572, 62 S.Ct. 766; see also *R.A.V. v. City of St. Paul, supra,* at 383, 112 S.Ct. 2538 (listing limited areas where the First Amendment permits restrictions on the content of speech). We have consequently held that

fighting words-"those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction"-are generally proscribable under the First Amendment. *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); see also *Chaplinsky v. New Hampshire*, supra, at 572, 62 S.Ct. 766. Furthermore, "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam). And the First Amendment also permits a State to ban a "true threat." *Watts v. United States*, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) *(per curiam)* (internal quotation marks omitted); accord, *R.A.V. v. City of St. Paul, supra,* at 388, 112 S.Ct. 2538 ("[T]hreats of violence are outside the First Amendment"); *Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 774, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994); *Schenck v. Pro-Choice Network of Western N. Y.,* 519 U.S. 357, 373, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997).

"True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. See *Watts v. United States, supra,* at 708, 89 S.Ct. 1399 ("political hyberbole" is not a true threat); *R.A.V. v. City of St. Paul,* 505 U.S., at 388, 112 S.Ct. 2538. The *360 speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." *Ibid.* Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death. Respondents do not contest that some cross burnings fit within this meaning of intimidating speech, and rightly so. As noted in Part II, *supra,* the history of cross burning in this country shows that cross burning is often intimidating, intended to create a pervasive fear in victims that they are a target of violence." Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536 (2003).

Defense's legal interpretation regarding the protections of the First Amendment as they perceive the amendment applying to the defendants postings is irrelevant. To allow such comments in closing would be tantamount to allowing a jury nullification argument. If the defense were allowed to argue its interpretation of First Amendment, the government would then be required to place before the jury all of the legal exceptions to the First Amendment. Such

2

legal issues are not proper for a jury's consideration. The confines of what is or is not prohibited under the First Amendment are implicit in this Court's definition of what constitutes a true threat.

                                        Respectfully submitted,
                                        JOSEPH S. VAN BOKKELEN
                                        UNITED STATES ATTORNEY

By:    /s/ Philip C. Benson
           Assistant United States Attorney

I hereby certify that on June 28, 2007, I filed the foregoing with the Clerk of Court using the EC/CMF system which sent notification of such filing to the following:

**John Martin**

                                            /s/ Philip C. Benson
                                            Assistant U.S. Attorney
                                            5400 Federal Plaza, Suite 1500
                                            Hammond, Indiana 46320