UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| V. | ) | CAUSE NO. 2:06 CR 63 |
| | ) | |
| VIKRAM BUDDHI | | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S "SENTENCING MEMORANDUM ON BEHALF OF VIKRAM S. BUDDHI"

Comes now the United States of America by David Capp, United States Attorney for the Northern District of Indiana, through Assistant United States Attorney Philip C. Benson, hereby files its response to the defendant's "Sentencing Memorandum on Behalf of Vikram S. Buddhi," and in support of its response the government states as follows:

**A. The Presentence Investigation Report Guideline Calculations Involving USSG 3A1.2(b) (Official Victim Enhancement) and USSG 3D1.4 (Non Grouping of Certain Counts) is Proper**

The arguments raised by Buddhi on pages 1-7 of his sentencing memorandum challenging the application of USSG 3A1.2(b), (official victim enhancement) and 3D1.4, (non grouping of certain counts), are identical to the arguments contained in Buddhi's objections to the presentence investigation report regarding these very same issues. Therefore, in response to Buddhi arguments in his sentencing memorandum regarding USSG 3A1.2(b), (official victim enhancement) and 3D1.4, (non grouping of certain counts), the government relies on, and incorporates by reference, its response contained on pages 24 through 27, and page 30 of the "Addendum to the Presentence Report."

**B. The Application of the Sentencing Considerations Contained in 18 U.S.C. §3553(a), Do Not Merit a Deviation to a Below Guideline Sentence, but do Support a Sentence at or Above the Suggested Guideline Range.**

On pages 7 through 39 of his sentencing memorandum, Buddhi argues that the application of the factors contained in 18 U.S.C. § 3553(a) merit a deviation from the recommended guideline sentence. Buddhi asserts that these 3553(a) factors require a reduction of his sentence from the recommended term of incarceration of 46-57 months, to 505 days incarceration (time served).

Buddhi asserts three main arguments in support of his 3553(a) request for a below guideline sentence: 1) the nature and circumstances of his offense, 2) his history and personal characteristics, and 3) the facts of this case fall outside the heartland of cases envisioned by the guidelines. The government disagrees.[1]

***1. Nature and Circumstances of Offense***

On pages 10 through 15 of his sentencing memorandum, Buddhi lays out several facts involving the nature and circumstances of his offense which he claims weigh in favor of a below guideline sentence. Much of Buddhi's arguments regarding the nature and circumstances of the offense are merely a challenge to the jury's verdict. Buddhi claims that his act of placing these threats in financial chatrooms is merely "forceful political opinions." (Def. Sent. Memo. pg. 12) The jury has rejected this argument and so should the Court. Buddhi used the fastest, most efficient, and most far reaching form he could to convey these threats, the internet. It is clear that Buddhi's numerous postings in different financial bulletin boards was an attempt by Buddhi to

---

[1] Although the Defendant's Sentencing Memorandum exceeds appropriate page limitations, the government has confined its response to those page limitations.

quickly, efficiently, and easily disseminate these threats.

Ironically, the defendant's discussion of the nature and circumstances of the offense fails to articulate that Buddhi posted these threats over several days and in several different internet bulletin boards. Additionally, Buddhi fails to mention that the his execution of this crime involved stealing the internet prodical address of another student and a significant disruption to that student's life. A trace of Buddhi's e-mail eventually led Secret Service Agents to that other student. That student was then interrogated and suspected of threatening the President. The student's computer was seized and a forensic computer examination was conducted by U.S.S.S. SA Christian Ebel-Orr. This examination yielded no evidence.

Scott Ksander, a forensic computer specialist with Purdue University subsequently determined that the internet prodical address used in these internet threats had been taken by Buddhi from this other student. Buddhi's actions clearly placed at risk another student. Buddhi's actions subjected that innocent student to an interrogation by Secret Service agents and the fear that the student could be charged with the crime that Buddhi stands convicted of. Additionally, Buddhi's use of this false IP address wasted valuable federal resources in that a search of this student's computer had to be conducted to positively eliminate the student as a suspect.

Buddhi also claims that he cooperated with federal agents and complied with the agents request that he discontinue his postings. (Def. Sent. Memo. pg.15) These suggestions of Buddhi's cooperation are not entirely accurate. While it is true that on January 18, 2006, Buddhi gave a statement to the SA Larry Brown and SA Wade Gault, Buddhi refused to allow these agents to search his residence, vehicle, or computer. Buddhi told the agents that if they really needed to see search these items, the agents could use the "Patriot Act" to get a warrant. Requiring the

3

agents to obtain a warrant and a half truthful self-serving statement, hardly constitutes cooperation as Buddhi claims in his sentencing memorandum.

While it is true Buddhi limited his postings after the agents interview of January 18, 2006, this should not have been surprising since Buddhi now knew that the agents had discovered Buddhi's use of the stolen IP addresses. However, while not a threatening communication, just two days after this interview, Buddhi used the screen name "john_f_wayne" to post another diatribe regarding the United States position in Irak. More disturbing, and perhaps more reflective of Buddhi's disdain for law enforcement, was a mocking addendum at the close of posting which read "PS: Hi GW, Cheney, Gau*lt, and Lar*y, howdy!". ( Govt. Ex.1) Clearly this was Buddhi's reference to his previous threat postings and to Special Agent Larry Brown and Wade Gault's interview conducted just two days prior to this posting by Buddhi.

Contrary to Buddhi's admissions to the agents and his claims of cooperation with the agents, Buddhi continued his attempt to drum up support for his false claim of innocence by fostering a story in "The Times of India" newspaper. In this newspaper article, Buddhi claimed that the postings at issue were not made by him. Buddhi's father continued his son's denial by claiming that "I have done extensive research and it is clear... that someone has hacked in to Buddhi's computer." (Govt. Ex.2) At trial, both of these statements were proved to be patently false.

The extremely vile and dangerous nature of the threats themselves, Buddhi's false claims of innocence and taunting of the agents, and his causing another student to be accused of this crime, are circumstances of this crime which warrant a guideline sentence.

## 2. *History and Characteristics of the Defendant*

On pages 16-19 of his sentencing memorandum, Buddhi lays out several facts involving his history and personal characteristics which he claims weigh in favor of a below guideline sentence. Much of Buddhi's argument in this section for a below guideline sentence relate to his educational advancements. There also is an unsupported assertion that while Buddhi's father was incarcerated, Buddhi was "instrumental in securing his father's freedom" by delivering "law books to him in jail" and encouraging his father to "fight to prove his innocence." (Def. Sent. Memo. Pg. 17). Buddhi also claims that his conduct while on bond, of volunteering at several community service organizations should be considered by the court for a below guideline sentence. (Def. Sent. Memo. Pg. 17) While the government does not dispute many of the educational accomplishments referenced in Buddhi's sentencing memorandum, they simply do not outweigh other conduct engaged in by Buddhi. If anything, a complete review of Buddhi's conduct while on bond, and his subsequent bond revocation, should constitute grounds for a sentence at or above the guideline range.

On April 19, 2006, Buddhi was originally detained on grounds that he was a flight risk. (R.8, 12) However, on July 18, 2006, a bond review hearing was held due to Buddhi's father's friend being willing to post a $100,000 surety/10% cash bond. (R. 30) This bond was posted and Buddhi was released on bond that day. Approximately one year later, on June 21, 2007, Buddhi's bond was revoked for threatening his father with knife. However, Buddhi's conduct on bond which eventually led to his bond being revoked, was not Buddhi's only contact with law enforcement while on bond.

On July 25, 2006, one week after release on bond, a female Purdue University student

5

(Victim 1) filed a police report alleging that Buddhi had exposed himself to her. Buddhi did this when he came to the Victim 1's apartment under the pretense of looking at some furniture she was selling. A phone number used by Buddhi to call Vicitm1 was identified as coming from a campus phone. Buddhi was living on campus a the time of this incident. Victim 1 provided a detailed written statement to law enforcement. Furthermore, in a photographic lineup, Victim 1 positively identified Buddhi as the perpetrator.

Apparently unfulfilled by this encounter, Buddhi continued to engage in similar conduct just three weeks later. On August 15, 2006, a second female Purdue University student ( Victim 2) filed a police report alleging that Buddhi had again exposed himself. As before, Buddhi did this when he came to the Victim 2's apartment under the pretense of looking at some furniture she was selling. Victim 2 saw Buddhi sitting on her couch, exposing his erect, condom covered penis. The victim stated that there appeared to be semen in the end of the condom. A phone number used by Buddhi to call Victim 2 was identified as coming from a a phone located at a residence where Buddhi stayed and had access to. Victim 2 provided a detailed written statement to law enforcement. Furthermore, in a photographic lineup, Victim 2 positively identified Buddhi as the perpetrator.

Buddhi's display of his lack respect for his pretrial release conditions was not limited to unknown females. The unacceptable pretrial release conduct which ultimately led to Buddhi's bond revocation occurred on June 6, 2007. The West Lafayette Police Department received a 911 call from Buddhi's father. During this call, Buddhi's father stated that his son had threatened him with a knife. An officer was dispatched to the scene. A report taken by the officer confirms the 911 recording, that Buddhi threatened his father with a knife. Buddhi denied

6

these allegations to the police. Furthermore, at the bond revocation hearing, Buddhi's father claimed that it was all just misunderstanding with the police. Unfortunately for Buddhi, Magistrate Rodovich found that Buddhi had violated the terms of his release and revoked his bond.

To substantiate these three incidents involving law enforcement, at sentencing, the government intends to present the police reports associated with the above described conduct.[2] Since the Federal Rules of Evidence do not apply, the district court may consider a broad range of information. *See United States v. Johnson*, 489 F.3d 794, 796-97 (7th Cir.2007) ( "a district court in determining a sentence is not bound by the same stringent evidentiary standards as are applicable in a criminal trial"). "A judge may consider otherwise inadmissible evidence in calculating a sentence" provided that the "evidence upon which the judge relies" has " 'sufficient indicia of reliability' . *United States. v. Jones*, 371 F.3d 363, 369 (7th Cir.2004) Furthermore, a district court judge makes findings for sentencing purposes under the preponderance of the evidence standard of proof, rather than the reasonable doubt standard of proof used by the jury in determining guilt. *United States v. Sliman*, 449 F.3d 797, 800 (7th Cir.2006) (stating that "the district court is to use the preponderance of evidence standard of proof when finding facts that affect a defendant's sentence").

The Supreme Court allows a sentencing court to include acts or omissions in its sentencing calculations even if the jury acquitted the defendant on those acts or omissions. *See United States v. Watts*, 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). This apparent

---

[2] For the privacy concerns of the two female victims, these reports will be presented at the sentencing hearing and not filed as attachments to this filing. Upon request, the government will make copies available to the court for review prior to the sentencing hearing.

7

contradiction exists because sentence calculations require a lower standard of proof than criminal convictions. "The Guidelines state that it is 'appropriate' that facts relevant to sentencing be proved by a preponderance of the evidence, and we have held that application of the preponderance standard at sentencing generally satisfies due process." Id. at 156, 117 S.Ct. 633; see also U.S.S.G. § 6A1.3 cmt.; *U.S. v. Gee*, 226 F.3d 885 C.A.7 (Ind.), 2000.

Numerous published opinions hold that for purposes of sentencing, items such as local and federal police reports, have "sufficient indicia of reliability" to be used at sentencing. See *U.S. v. Leekins*, 493 F.3d 143 (3d Cir. 2007), (Sentencing court properly considered the content of a police report that described the defendant's arrest when imposing an increased sentence on the defendant); *U.S. v. Posada-Rios*, 158 F.3d 832, 50 Fed. R. Evid. Serv. 392 (5th Cir. 1998), (Local police report which described a murder sufficiently reliable to be considered when sentencing the defendant for racketeering); *U.S. v. Boggs*, 991 F.2d 796 (6th Cir. 1993), (District Court's use of information found in the presentence investigation report, which was taken from a police report to determine the amount of the loss attempted by the defendant, met the necessary standard of reliability); *U.S. v. Roach*, 164 F.3d 403, 50 Fed. R. Evid. Serv. 1483 (8th Cir. 1998), (District Court properly considered local police department's record of state misdemeanor conviction in computing his criminal history category); *U.S. v. Marquardt*, 949 F.2d 283 (9th Cir. 1991), (Report by a postal inspector concerning the age of children depicted in pornographic material transported interstate by the defendant was not shown to lack sufficient indicia of reliability); *U.S. v. Williams*, 2007 WL 257616 (11th Cir. 2007), cert. denied, 127 S. Ct. 2890, 167 L. Ed. 2d 1162 (U.S. 2007), (information found in the presentence investigation report, which initially was found in a police report, was sufficiently reliable).

Numerous unpublished opinions are consistent with the above published opinions on the admissibility at sentencing of these types of reports. *See U.S. v. Smith*, 2008 WL 197065 (3d Cir. 2008) (unpublished disposition), (District court did not abuse its discretion in imposing a sentence enhancement based on a police report that the weapon possessed by the defendant was stolen; *U.S. v. Romano*, 89 Fed. Appx. 335 (3d Cir. 2004) (unpublished disposition) (Court properly relied on information regarding monetary loss suffered by the victims which was originally reported in an investigatory report); *U.S. v. Tate*, 41 Fed. Appx. 541 (3d Cir. 2002) (unpublished disposition to which citation is limited), (Information found in a police report that the defendant had possessed drugs when he committed a prior crime was sufficiently reliable, within the meaning of U.S.S.G. § 6A1.3); *U.S. v. Charlesworth*, 5 Fed. Appx. 612 (9th Cir. 2001) (unpublished disposition).(Report written by a Secret Service agent regarding the amount of counterfeit currency for which the defendant was responsible was found to be sufficiently reliable); *U.S. v. Matson*, 243 Fed. Appx. 455 (11th Cir. 2007), (unpublished disposition to which citation is limited), (Report by a federal law enforcement agency was sufficiently reliable within the meaning of U.S.S.G. § 6A1.3); *U.S. v. Gibson*, 189 Fed. Appx. 841 (11th Cir. 2006), (unpublished), (Report authored by the arresting officer had sufficient indicia of reliability, within the meaning of U.S.S.G. § 6A1.3 to be considered by the court at the defendant's sentencing)

Even information from the National Crime Information Computer (NCIC) system, and prison/jail records have been found to be reliable pursuant to U.S.S.G. §6A1.3. *See U.S. v. Martinez-Jimenez*, 464 F.3d 1205 (10th Cir. 2006), (Printout of the information found in the data system of the National Crime Information Center sufficiently reliable to be considered at

9

sentencing); and *U.S. v. Stobaugh*, 420 F.3d 796 (8th Cir. 2005), (Evidence of assorted computer records, some of which were from prisons or jails, regarding the defendant's prior state convictions had "sufficient indicia of reliability to support their probable accuracy," within the meaning of U.S.S.G. § 6A1.3)

Based upon the above, as part of a determination regarding the defendants 3553(a) factors, the court can, and should, consider the police reports and testimony regarding the two incidents of Buddhi exposing himself to female individuals, and his threatening his father with a knife.

**C.** **Buddhi's Claims of Vulnerability While in Prison and Subsequent Deportation Do Not Merit a Deviation to a below Guideline Sentence.**

*1.* *Prison Vulnerability*

Buddhi argues that his guideline range should be reduced due to "extreme vulnerability" and a "history of actual victimization," while incarcerated. (Def. Sent. Memo. P. 34). To support his claim, Buddhi attaches jail medical reports regarding four separate incidents. The injuries documented in these four medical reports amount to a minor neck strain, a small bruise and abrasion on his left arm, a claimed elbow strain, and a one inch cut on his head (which did not require stitches). (Def. Sent. Memo. Ex. L-N). Buddhi also relies on his own self-serving statements contained within those medical reports as to how the incident occurred, to further buttress his claim of extreme vulnerability. These assertions are insufficient to support a downward departure. To the extent that Buddhi claims may be interpreted to rely on the nature of a his offense as a factor justifying a sentencing departure for vulnerability to abuse in prison, that reason is also insufficient.

10

While vulnerability to abuse is an accepted basis for departing from the recommended sentencing range, see *Koon*, 518 U.S. at 112, 116 S.Ct. 2035; *United States v. Drew*, 131 F.3d 1269, 1271 (8th Cir.1997), this departure is reserved for extraordinary situations, see *United States v. Kapitzke*, 130 F.3d 820, 822 (8th Cir.1997); *United States v. Graham*, 83 F.3d 1466, 1481 (D.C.Cir.1996), cert. denied, 519 U.S. 1132, 117 S.Ct. 993, 136 L.Ed.2d 874 (1997); *United States v. Maddox*, 48 F.3d 791, 797-98 (4th Cir.1995). "[T]o qualify for a downward departure, a defendant's vulnerability must be so extreme as to substantially affect the severity of confinement, such as where only solitary confinement can protect the defendant from abuse." Graham, 83 F.3d at 1481 (citing *United States v. Lara*, 905 F.2d 599, 602-03 (2d Cir.1990)). Mere membership in a particular class of offenders that may be susceptible to abuse in prison does not merit a departure for vulnerability to abuse in prison. See *Kapitzke*, 130 F.3d at 822; *United States v. Rybicki*, 96 F.3d 754, 759 (4th Cir.1996). Instead, the district court must make an individualized determination. See *Koon*, 518 U.S. at 112, 116 S.Ct. 2035 (confirming that district court could depart for vulnerability given " 'extraordinary notoriety and national media coverage of this case, coupled with the defendants' status as police officers' ") (quoting *United States v. Koon*, 833 F.Supp. 769, 785-86 (C.D.Cal.1993)).

Furthermore, a district court may not rely on the nature of a defendant's offense as a factor justifying a sentencing departure for vulnerability to abuse in prison. If defendants were permitted to rely on their offense of conviction as a reason to justify a departure from the range recommended by the Guidelines, that would eviscerate the recommended guideline range for crimes and undermine the goals of the Sentencing Reform Act of 1984. *See Kapitzke*, 130 F.3d at 822 (rejecting district court's reliance on the nature of defendant's offense of possessing child

11

pornography as making him eligible for departure); see also *Rybicki*, 96 F.3d at 759 (rejecting district court's reliance on the effects of prison on law enforcement officers as a class in considering vulnerability)

Buddhi has demonstrated no vulnerability, let alone extreme vulnerability sufficient to warrant sentence outside of the guideline range. Buddhi's further reliance on his own self-serving renditions of how these incidents occurred adds no credible support to his claim.

### 2. *Buddhi's Possible Deportation*

Without citation to any relevant case law, Buddhi argues that his future deportation is a form of punishment and therefore, his sentence imposes greater punishment on him as a a deportable alien, than on a United States citizen. This is wrong. It implies that any alien who commits a crime should receive a shorter sentence than a United States citizen who commits the exact same crime. Such a rule would invite aliens who did not want to live in the United States to come here to commit crimes. The "double punishment" argument has been rejected in the double-jeopardy setting, *United States v. Yacoubian*, 24 F.3d 1, 9-10 (9th Cir.1994). It also not appropriate at sentencing. *U.S. v. Guzman*, 236 F.3d 830, 834 (7th Cir. 2001). *See also United States v. Tejeda*, 146 F.3d 84, 88 (2d Cir.1998) (per curiam); *United States v. Leandre*, 132 F.3d 796, 808 (D.C.Cir.1998); *United States v. Alvarez-Cardenas*, 902 F.2d 734, 737 (9th Cir.1990). A defendant's status as a deportable alien is only relevant insofar as it may lead to additional conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense. *Guzman* at 834.

Buddhi's additional claims of lost educational opportunities due to his deportation, are

also unavailing. It is Buddhi himself who put this educational prospects in the proverbial "cross-hairs," when he choose the threaten the leaders of this country and blow up mass transportation and energy hubs throughout the United States. At the time of his felonious conduct that gave rise to his convictions, it is Buddhi himself who made the decision to risk all that this country had offered, and had to offer, to him. Buddhi surely can claim no surprise that with his conviction, comes deportation. Furthermore, Buddhi's deportation to India, an industrialized, modern country, where Buddhi has successful family and many educational contacts is clearly not the type of punishment that is substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for Buddhi's offense.

Wherefore, the government respectfully respects that a sentence at or above the guideline calculated in the presentence investigation report be imposed.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY


 S/ Philip C. Benson
Philip C. Benson
Assistant United States Attorney

United States Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, IN  46320
Tel:  (219)937-5500
Fax:  (219)852-2770
Internet Address:  philip.benson@usdoj.gov

# Certificate of Service

I hereby certified that November 28, 2008 I filed GOVERNMENT'S RESPONSE TO DEFENDANT'S "SENTENCING MEMORANDUM ON BEHALF OF VIKRAM S. BUDDHI" and attachments with the Clerk of the Court; such filing to be made to the following:

by electronic filing:

**John E. Martin   (john_martin@fd.org )**


and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

**NONE**

                                              S/ Philip C. Benson
                                              Assistant United States Attorney